# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| **ANDREW BLESI, on behalf of himself and all others similarly situated,** | § § § | |
| | § | **Case No.** 3:23-cv-00660 |
| **Plaintiffs,** | § | |
| | § | **ORIGINAL VERIFIED CLASS** |
| **v.** | § | **AND COLLECTIVE ACTION** |
| | § | **COMPLAINT** |
| **SOIL BUILDING SYSTEMS, INC.,** | § | |
| **BARON ABLON, and NEAL GUTKIN,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

Andrew Blesi ("**Mr. Blesi**" or "**Plaintiff**"), on behalf of himself and all others similarly situated, files this Original Class and Collective Action Complaint against Soil Building Systems, Inc. ("**SBS**"), Baron Ablon ("**Ablon**"), and Neal Gutkin ("**Gutkin**") (collectively, "**Defendants**"), concerning their acts and status upon actual knowledge, and concerning all other matters upon information, belief, and investigation, and respectfully shows the Court the following:

## I. NATURE OF THE CASE

1.     Plaintiff brings this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("**FLSA**"), on behalf of himself and all other similarly situated non-exempt, hourly paid employees of SBS forming the putative FLSA Collective ("**Collective Members**") because Defendants knowing paid wages to Plaintiff and the Collective Members for less hours than actually worked and knowingly required, suffered, or permitted Plaintiff and the Collective Members to work more than 40 hours per week without paying them overtime wages.

2.     Plaintiff also brings this class action on behalf of himself and all other similarly situated non-exempt, hourly paid employees in Texas ("**Texas Class**") as a class action under Federal Rule of Civil Procedure 23 to remedy violations of the Texas Minimum Wage Act, Chapter 62 of the Texas Labor Code ("**TMWA**").

## II. **THE PARTIES**

3.      Andrew Blesi is an adult citizen of the State of Texas. Written consent forms for Mr. Blesi are attached hereto as **Exhibit A** and **Exhibit B**.

4.      Defendant Soil Building Systems, Inc., is a Texas for-profit corporation doing business in Dallas County, Texas. SBS may be served with process through its registered agent, Baron Ablon, at its registered office, 1770 Y Street, Dallas, Texas 75229, or its principal office, 2101 Walnut Hill Lane, Dallas, Texas 75229. Issuance of citation to this Defendant is requested.

5.      Defendant Baron Ablon is an individual residing in Dallas County, Texas, and may be served with process at his usual place of business at 1770 Y Street, Dallas, Texas 75229, or 2101 Walnut Hill Lane, Dallas, Texas 75229, or wherever else he may be found. Issuance of citation to this Defendant is requested.

6.      Defendant Neal Gutkin is an individual residing in Dallas County, Texas, and may be served with process at his usual place of business at 1770 Y Street, Dallas, Texas 75229, or 2101 Walnut Hill Lane, Dallas, Texas 75229, or wherever else he may be found. Issuance of citation to this Defendant is requested.

## III. **JURISDICTION AND VENUE**

7.      This Court has jurisdiction of this action under 29 U.S.C. § 216(b) (FLSA actions "may be maintained against any employer…in any Federal or State court of competent jurisdiction"), and under 28 U.S.C. § 1331 (federal question jurisdiction) because Plaintiff pleads a claim under the FLSA. This Court has jurisdiction over Plaintiff's TMWA claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction). Moreover, this Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      The TMWA claims are so closely related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside and do business within this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## IV. <u>BACKGROUND FACTS</u>

### A.      <u>SBS is a dirty company.</u>

10.      According to its website:

> SBS is the leading manufacturer and wholesaler of high quality bagged and bulk organic composts, soil mixes, mulches and specialty products, serving Dallas/Ft. Worth Metroplex landscape professionals and gardening enthusiasts since 1972. From the most pristine private gardens to the most prestigious commercial and public installations, SBS is the trusted supplier of quality-certified and finished organic landscaping materials.

11.      In other words, SBS makes and sells dirt.

12.      As described below, SBS unfortunately does so in a very dirty way with respect to its non-exempt hourly employees.

### B.      <u>Ablon and Gutkin own and control SBS.</u>

13.      At all times relevant to this suit, Ablon is or was the President and Chief Executive Officer ("CEO") of SBS and holds or held a significant ownership interest in SBS.

14.      At all times relevant to this suit, Gutkin is or was the Chief Operating Officer ("COO") and General Manager of SBS and holds or held a significant ownership interest in SBS.

15.      At all times relevant to this suit, Ablon and Gutkin exercised full day-to-day operational control over the affairs of SBS, including without limitation Ablon and Gutkin acting directly or indirectly in the interests of SBS with respect to hiring, firing, supervising, controlling

work schedules and conditions of employment, and making wage payment decisions with respect to Mr. Blesi and other similarly situated non-exempt hourly employees of SBS.

16.     For example, without limitation: at all times relevant to this suit: (a) Ablon and Gutkin have, had, and exercised the powers to hire and fire Mr. Blesi and other similarly situated non-exempt hourly employees of SBS, to supervise or control his and their work schedules and conditions of employment, and to determine his and their rate and method of payment of wages; (b) Ablon and Gutkin were directly or indirectly responsible for, or at least had knowledge of and failed to correct, the scheme described below to alter the timecards of Mr. Blesi and other similarly situated non-exempt hourly employees of SBS and/or otherwise to avoid paying regular wages for time worked under 40 hours per week and overtime wages for time worked in excess of 40 hours per week; and (c) Ablon and Gutkin were directly responsible for hiring Mr. Blesi at one rate of pay, actually paying him at a lower rate, failing to pay him both regular and overtime pay for hours he actually worked, failing to correct the issues after Mr. Blesi provided notice upon receipt of his first paycheck and continued to provide notice thereafter, and firing Mr. Blesi, as described below.

**C.     Ablon hires Mr. Blesi to work for SBS.**

17.     On or about June 15, 2022, Ablon hired Mr. Blesi to work for SBS as an equipment operator, classified as a W-2 non-exempt hourly employee.

18.     SBS hired Mr. Blesi at the pay rate of $18.00 per hour.

19.     SBS assigned Mr. Blesi to the "second shift," with a schedule of 2:00pm to 11:00pm with 30 minutes for lunch, and SBS told Mr. Blesi that he would be working Tuesday through Sunday—*i.e.*, a 51-hour work week.

20.     SBS promised to pay Mr. Blesi weekly, on a Sunday to Saturday pay period.

**D.    SBS underpays Mr. Blesi for his first week at a rate less than at which he was hired, and Mr. Blesi notifies Gutkin, who promises to correct the problem.**

21.    Mr. Blesi's first day on the job was Saturday June 18, 2022.

22.    That day, Saturday June 18, 2022, Mr. Blesi began working at 2:00pm, took a lunch break from 7pm to 7:30pm, and stopped working at 11:00pm, for a total of 8.5 hours worked.

23.    Accordingly, under SBS's Sunday to Saturday work week, Mr. Blesi's first week of work comprised only the 8.5 hours worked on June 18, 2022, for which he was due wages of $153.00 (8.5 hours x $18.00/hour = $153.00).

24.    Mr. Blesi timely and properly reported to SBS his hours worked in his first week.

25.    On Wednesday June 22, 2022, Mr. Blesi inquired about his paycheck for his first week of work. He was told he would be given a handwritten check that day.

26.    The check was provided that day, but it was only for the amount of $119.00—a $14.00 per hour pay rate rather than the $18.00 per hour rate at which Mr. Blesi was hired.

27.    Mr. Blesi immediately brought the pay rate discrepancy to the attention of SBS's Chief Operations Officer, Neal Gutkin, who promised he would "take care of it."

28.    Contrary to Gutkin's promise, SBS never corrected Mr. Blesi's pay for his first week of work.

**E.    Despite Gutkin's promise, SBS not only fails to pay Mr. Blesi for his second week of work at the rate at which he was hired, but also compounds the problem by paying Mr. Blesi for less hours than he worked and reported, and for *none* of his overtime.**

29.    During his second week of work for SBS, Mr. Blesi worked the following hours:

a.    Monday June 20, 2022: started work at 2:00pm, took a lunch break from 7:00pm to 7:30pm, stopped working at 11:00pm, total of 8.5 hours worked.

b.    Tuesday June 21, 2022: started work at 2:00pm, took a lunch break from 7:00pm to 7:30pm, stopped working at 11:00pm, total of 8.5 hours worked.

    c.    Wednesday June 22, 2022: started work at 6:30pm, did not take a lunch break, stopped working at 11:30pm, total of 5.0 hours worked.

    d.    Thursday June 23, 2022: started work at 2:00pm, took a lunch break from 7:00pm to 7:30pm, stopped working at 11:00pm, total of 8.5 hours worked.

    e.    Friday June 24, 2022: started work at 2:00pm, took a lunch break from 8:00pm to 8:30pm, stopped working at 10:00pm, total of 7.5 hours worked.

    f.    Saturday June 25, 2022: started work at 2:00pm, took a lunch break from 8:00pm to 8:30pm, stopped working at 11:00pm, total of 8.5 hours worked.

30.    Accordingly, during his second week of work, Mr. Blesi worked a total of 46.5 hours. Given the same, his weekly pay should have been $895.50 gross before withholdings based upon the $18.00 per hour rate at which he was hired, to wit: (a) 40 hours x $18.00/hour = $720.00; (b) 6.5 hours of overtime at $27.00/hour = $175.50; and (c) $720.00 + $172.50 = $895.50.

31.    Pleading in the strict alternative, even if Mr. Blesi's correct rate of pay had been the $14.00 per hour that he was paid for his first day on the job (which he denies), Mr. Blesi's pay for his second week of work should have been $696.50 gross before withholdings, to wit: (a) 40 hours x $14.00/hour = $560.00; (b) 6.5 hours of overtime at $21.00/hour = $136.50; and (c) $560.00 + $136.50 = $696.50.

32.    Mr. Blesi timely and properly reported to SBS his hours worked in his second week.

33.    Contrary to what Mr. Blesi was rightfully owed for his second week of work for SBS, however, Mr. Blesi's pay stub dated June 29, 2022, for the pay period ending June 25, 2022, showed only 35.55 hours at $14.00 per hour, for gross pay before withholdings of only $497.70—*roughly half* of what Mr. Blesi was owed at the $18.00 per hour rate at which he was hired (or, in the strict alternative, *roughly two-thirds* of what Mr. Blesi was owed even at the $14.00 per hour rate at which he was paid).

34.     Thus, for Mr. Blesi's second week of work SBS not only failed to pay Mr. Blesi at the rate at which he was hired (despite Gutkin's promise to fix the issue), but also SBS failed to pay Mr. Blesi for the total number of hours he worked and for *any* overtime.

35.     SBS, Ablon, and Gutkin never corrected these errors despite Gutkin's promises.

**F.     SBS again underpays Mr. Blesi for his third week, including for less hours than he worked and for *none* of his overtime work.**

36.     During his third week of work for SBS, Mr. Blesi worked the following hours:

  a.     Sunday June 26, 2022: started work at 1:40pm, took no lunch break, stopped working at 8:00pm, total of 6.33 hours worked.

  b.     Tuesday June 28, 2022: started work at 2:00pm, took a lunch break from 9:00pm to 9:30pm, stopped working at 10:00pm, total of 7.5 hours worked.

  c.     Wednesday June 29, 2022: started work at 2:00pm, took a lunch break from 9:00pm to 9:30pm, stopped working at 10:00pm, total of 7.5 hours worked.

  d.     Thursday June 30, 2022: off work due to injury.

  e.     Friday July 1, 2022: started work at 1:30pm, took a lunch break from 8:30pm to 9:00pm, stopped working at 11:00pm, total of 9.0 hours worked.

  f.     Saturday July 2, 2022: started work at 2:00pm, took a lunch break from 8:30pm to 9:00pm, stopped working at 11:00pm, total of 8.5 hours worked.

37.     Accordingly, during his third week of work, Mr. Blesi worked a total of 38.83 hours. Given the same, his weekly pay should have been $698.94 gross before withholdings based upon the $18.00 per hour rate at which he was hired (38.83 hours x $18/hour = $698.94).

38.     Pleading in the strict alternative, even if Mr. Blesi's correct rate of pay had been the $14.00 per hour that he was paid for his first day on the job (which he denies), Mr. Blesi's pay for his third week of work should have been $543.62 gross before withholdings (38.83 hours x $14/hour = $543.62).

39.     Mr. Blesi timely and properly reported to SBS his hours worked in his first week.

40.    Contrary to what Mr. Blesi was rightfully owed for his third week of work for SBS, however, Mr. Blesi was paid for only 28.33 hours of work. He was provided with no pay stub, and instead received a direct deposit of $433.62, apparently net after withholdings. It thus appears that SBS may have corrected Mr. Blesi's rate of pay to the $18.00 per hour at which he was hired, but SBS yet again failed to pay Mr. Blesi for all hours he worked during that pay period.

**G.    Gutkin rebuffs Mr. Blesi's attempts to have SBS correct the pay discrepancies.**

41.    Despite the prior promise noted hereinabove by Gutkin to correct Mr. Blesi's rate of pay, SBS continued to fail to pay Mr. Blesi at the rate at which he was hired. Given the same and the compounding of the problems by SBS also failing to pay Mr. Blesi for all hours he worked, including overtime, Mr. Blesi repeatedly attempted to contact Gutkin to seek to fix the problems.

42.    Specifically, on or about June 28, 2022, Mr. Blesi text messaged Gutkin requesting a meeting to discuss the discrepancies in hours and rate of pay, but Mr. Blesi received no response.

43.    Mr. Blesi thus again attempted to contact Gutkin on or about June 29, 2022, by calling the SBS main number and asking to speak with Gutkin, but Mr. Blesi was told that Gutkin was not in the office.

44.    Mr. Blesi thus yet again attempted to contact Gutkin, in person, on or about July 1, 2022, but he was told Gutkin had already left the office.

**H.    After ignoring Mr. Blesi's complaints, SBS underpays Mr. Blesi for his fourth week, including for less hours than he worked and for *none* of his overtime work.**

45.    While still trying to resolve these pay discrepancies, Mr. Blesi came into work for SBS for a fourth week, working the following hours:

    a.    Monday July 4, 2022: started work at 2:00pm, took no lunch break, stopped working at 11:00pm, total of 9 hours worked.

    b.    Tuesday July 5, 2022: started work at 1:55pm, took a lunch break from 9:00pm to 9:30pm, stopped working at 11:00pm, total of 8.5 hours worked.

     c.     Thursday July 7, 2022: started work at 2:30pm, took a lunch break from 9:00pm to 9:30pm, stopped working at 11:00pm, total of 8 hours worked.

     d.     Friday July 8, 2022: started work at 2:30pm, took a lunch break from 9:00pm to 9:30pm, stopped working at 11:00pm, total of 8 hours worked.

     e.     Saturday July 9, 2022: started work at 2:00pm, took a lunch break from 9:05pm to 9:35pm, stopped working at 11:00pm, total of 8.5 hours worked.

46.     Accordingly, during his fourth week of work, Mr. Blesi worked a total of 42 hours. Given the same, his weekly pay should have been $756.00 gross before withholdings based upon the $18.00 per hour rate at which he was hired (42 hours x $18/hour = $756.00).

47.     Pleading in the strict alternative, even if Mr. Blesi's correct rate of pay had been the $14.00 per hour that he was paid for his first day on the job (which he denies), Mr. Blesi's pay for his fourth week of work should have been $588.00 gross before withholdings (42 hours x $14/hour = $588.00).

48.     Contrary to what Mr. Blesi was rightfully owed for his fourth week of work for SBS, however, Mr. Blesi was paid for only 31 hours of work and no overtime.

49.     SBS thus yet again failed to pay Mr. Blesi for all hours he worked during that pay period and for *any* overtime.

**I.**     <u>**SBS fires Mr. Blesi and never corrects the pay discrepancies.**</u>

50.     Despite Mr. Blesi's repeated efforts to have SBS correct the pay discrepancies described above—or, apparently more accurately, because of them—SBS, at the direction of Ablon and Gutkin, fired Mr. Blesi on or about July 12, 2022.

51.     Neither before nor after such termination did SBS, Ablon, or Gutkin ever correct the pay discrepancies described hereinabove, despite Mr. Blesi's repeated complaints.

**J.**    **SBS, Ablon, and Gutkin were "employers" of Mr. Blesi and similarly situated non-exempt hourly employees.**

52.    At all times relevant to this suit, SBS, Ablon, and Gutkin were each an "employer" of Plaintiff and similarly situated non-exempt hourly employees of SBS within the meaning of the FLSA and TMWA, and Ablon and Gutkin exercised ownership, control, oversight, and direction of SBS as set forth hereinabove.

53.    At all times relevant to this suit, SBS, Ablon, and Gutkin maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to Mr. Blesi and similarly situated employees.

54.    At all times relevant to this suit, SBS, Ablon, and Gutkin applied the same employment policies, practices, and procedures to, and exerted the same formal and functional control over, all non-exempt, hourly employees, including Plaintiff and similarly situated employees.

55.    At all times relevant to this suit, SBS had at least two employees and SBS's annual gross volume of sales or business done was at least $500,000.

## V. FLSA COLLECTIVE ACTION ALLEGATIONS

56.    Plaintiff brings this collective action for himself and all others similarly situated pursuant to 29 U.S.C. § 216(b) to recover unpaid wages, unpaid overtime wages, liquidated damages, and other damages related to Defendants' violations of the FLSA.

57.    Plaintiff pursues this action on behalf of the following Collective Members:

> All individuals who currently work, or have worked, for Defendant SBS as non-exempt, hourly paid employees, during the applicable statute of limitations period, and performed regular and overtime work without receiving all wages owed for such work.

58.    Plaintiff is one of the Collective Members whom he seeks to represent because he was classified as non-exempt and employed on an hourly basis during the relevant period, and he was routinely required, suffered, or permitted to work more than 40 hours per week but was not paid anything for hours worked both under and over 40 hours per week.

59.    Specifically, even though Plaintiff and the Collective Members did not satisfy any test for exemption, Defendants engaged in a common scheme requiring, suffering, or permitting Plaintiff and Collective Members to work off the clock (including without limitation by altering timecards) while Defendants failed to pay Plaintiff and the Collective Members regular and overtime pay when they worked less than and/or in excess of 40 hours per week.

60.    Although Plaintiff and the Collective Members may have had different job titles, been hired by different individuals, and/or worked in different offices during the relevant period, this action may be properly maintained as a collective action because Plaintiff and the Collective Members were similarly situated, including without limitation as follows:

   a.    Plaintiff and Collective Members were hired by or at the direction of Ablon and/or Gutkin and assigned to work for SBS.

   b.    SBS required Plaintiff and Collective Members to follow its company policies, practices, and directives.

   c.    Plaintiff and Collective Members were all classified as non-exempt.

   d.    Plaintiff and Collective Members were all hourly paid employees.

   e.    Plaintiff and Collective Members all worked less than 40 hours per week.

   f.    Plaintiff and Collective Members all worked in excess of 40 hours per week.

   g.    Defendants required, suffered, or permitted Plaintiff and Collective Members to work off the clock without any pay when working less than 40 hours per week.

h.  Defendants required, suffered, or permitted Plaintiff and Collective Members to work off the clock without any pay when working in excess of 40 hours per week.

i.  Regardless of their job title or location, Defendants did not pay Plaintiff and the Collective Members an hourly rate for all time worked, including both time worked less than 40 hours per week and time worked in excess of 40 hours per week.

j.  Regardless of their job title or location, Defendants did not pay Plaintiff and the Collective Members an overtime premium of 1½ times their regular hourly rate for all time worked in excess of 40 hours per week.

k.  Defendants maintained common timekeeping systems and policies with respect to Plaintiff and the Collective Members regardless of their job title or location.

l.  Defendants failed to record all the time actually worked by Plaintiff and Collective Members and/or altered timecards submitted by Plaintiff and Collective Members.

m.  Defendants maintained data and/or records showing that Plaintiff and Collective Members worked less and/or more than 40 hour per week without any pay and/or without an overtime premium.

61.    Plaintiff estimates that there will be at least dozens of Collective Members, including both current and former employees over the relevant period.

62.    The precise number of Collective Members should be readily available from Defendants' personnel records, scheduling records, time records, and from input received from the Collective Members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

63.    Given the composition and size of the Collective, its members may be informed of the pendency of this action directly via U.S. mail and via electronic mail.

64.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

## VI. TMWA CLASS ALLEGATIONS

65.    Plaintiff brings this class action for violations of the TMWA under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following "**Texas Class**":

> All individuals who currently work, or have worked, for Defendant SBS in Texas as non-exempt, hourly paid employees, during the applicable statute of limitations period, and performed regular and overtime work without receiving all wages owed for such work.

66.     Excluded from the Texas Class are SBS's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in SBS; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Texas Class.

67.     The persons in the Texas Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

68.     On information and belief, the Texas Class includes at least 50 employees.

69.     Defendants acted or refused to act on grounds generally applicable to the Texas Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Texas Class as a whole.

70.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are material questions of law and fact common to the Texas Class that predominate over any questions solely affecting individual members of the Texas Class, including but not limited to:

      a.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Texas Class;

      b.     whether Defendants altered time records for all hours worked by Plaintiff and the Texas Class;

    c.       what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records and/or alters time records;

    d.       whether Defendants failed and/or refused to pay Plaintiff and the Texas Class regular pay for hours worked less than 40 hours per workweek as required by the TMWA;

    e.       whether Defendants failed and/or refused to pay Plaintiff and the Texas Class overtime pay for hours worked in excess of 40 hours per workweek as required by the TMWA;

    f.       the nature and extent of the class-wide injury and the appropriate measure of damages for the Texas Class;

    g.       whether Defendants have a policy of denying Plaintiff and the Texas Class compensation for hours worked off the clock under 40 hours in a workweek;

    h.       whether Defendants have a policy of denying Plaintiff and the Texas Class compensation for hours worked off the clock over 40 in a workweek; and

    i.       whether Defendants willfully or recklessly disregarded the law in implementing the subject wage and hour policies applicable to Plaintiff and the Texas Class.

71.     Plaintiff's claims are typical of the claims of the Texas Class he seeks to represent.

72.     Plaintiff and the Texas Class Members work or have worked for Defendants in Texas and have been subjected to Defendants' policy and pattern or practice of failing to pay regular and overtime wages for hours worked less than and in excess of 40 hours per week.

73.     Defendants acted and refused to act on grounds generally applicable to the Texas Class, thereby making declaratory relief with respect to the Texas Class appropriate.

74.     Plaintiff has retained counsel competent and experienced in employment and complex class action litigation.

75.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action,

where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

76.    The members of the Texas Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

77.    Although the relative damages suffered by individual members of the Texas Class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation.

78.    In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## VII. <u>CLASS AND COLLECTIVE FACTUAL ALLEGATIONS</u>

79.    All of the work that Plaintiff, the FLSA Collective Members, and the Texas Class members (together, "**Class Members**") performed was assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiff and the Class Members have performed.

80.    Defendants employed Class Members in Texas and/or nationwide.

81.    Upon information and belief, Defendant SBS's business is a centralized, top-down operation controlled by Ablon and/or Gutkin in Dallas, Texas.

82.    Pursuant to corporate policies formulated in whole or in part at SBS's headquarters in Dallas and applicable at SBS's locations in Texas and/or nationwide, Defendants have denied Collective Members and Class Members compensation for hours worked off the clock both under and over 40 hours in a workweek.

83.    Pursuant to corporate policies formulated in whole or part at SBS's headquarters in Dallas, and applicable at SBS's locations in Texas and/or nationwide, Defendants have encouraged

and required Collective Members and Class Members to work less than and/or more than 40 hours per workweek off the clock and without pay.

## VIII. <u>CAUSES OF ACTION</u>

**A.    COUNT 1: VIOLATION OF THE FLSA**
**(PLAINTIFF AND THE FLSA COLLECTIVE MEMBERS V. DEFENDANTS)**

84.    All paragraphs through Section VII of this Petition are hereby incorporated by reference as if fully set forth herein.

85.    At  all times relevant to this suit, Defendant SBS is and was an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is and was engaged in commerce, or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

86.    At  all times relevant to this suit, Defendants are and were "employers" as defined by the FLSA and case law construing it.

87.    Plaintiff and the Collective Members are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

88.    The FLSA, at 29 U.S.C. § 206(a)(1), states that employees must be paid a minimum wage, not less than $7.25 per hour, for all hours worked under 40 hours per week.

89.    The FLSA, at 29 U.S.C. § 207(a)(1), states that employees must be paid an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

90.    Throughout the relevant period, Plaintiff and Collective Members were classified as "non-exempt" from the FLSA's overtime requirements and paid an hourly rate of pay.

91.    Throughout the relevant period, Defendants violated the FLSA by engaging in a common scheme requiring, suffering, or permitting Plaintiff and the Collective Members to work under 40 hours per week, off the clock and without pay.

92.     Throughout the relevant period, Defendants violated the FLSA by engaging in a common scheme requiring, suffering, or permitting Plaintiff and the Collective Members to work more than 40 hours per week, off the clock and without pay.

93.     Throughout the relevant period, Plaintiff and the Collective Members worked under 40 hours per week but were not paid a minimum wage of at least $7.25 per hour for all such work.

94.     Throughout the relevant period, Plaintiff and the Collective Members worked in excess of 40 hours per week but were not paid an overtime premium of 1½ times their regular hourly rate for those additional hours.

95.     Throughout the relevant period, Defendants violated the FLSA by failing to keep accurate, contemporaneous records of the hours Plaintiff and Collective Members actually worked each week and/or by altering records of the hours Plaintiff and Collective Members actually worked each week. While, under the circumstances, Defendants' time records will not fully demonstrate Plaintiff's and Collective Members' regular and overtime work, other records and data points exist that will confirm the nature and extent of Plaintiff's and Collective Members' overtime work.

96.     Plaintiff and the Collective Members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of regular and overtime wages owed for time worked under and/or in excess of 40 hours per week from which Defendants derived a direct and substantial benefit.

97.     Defendants' violations of the FLSA, as described in this Collective Action Complaint, have been willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and other similarly situated current and former employees (*i.e.*, Collective Members).

98.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

99.     Plaintiff has consented in writing to become a party plaintiff in this action and such consent is being filed with this Complaint. *See* Exhibit A

100.    Moreover, Ablon and Gutkin are the individuals who had full operational control over all affairs of SBS. Ablon and Gutkin knew, had reason to know, or, alternatively, recklessly disregarded, that SBS had an obligation to pay regular and overtime wages to Plaintiff and the Collective Members. Yet, SBS has failed to pay those regular and overtime wages to Plaintiff and the Collective Members, and Ablon and Gutkin knew and failed to remedy the same, even upon demand. For example, without limitation, after Gutkin's initial placating promise to "take care of it" when Plaintiff first complained about pay discrepancies, Ablon and Gutkin deliberately refused to communicate further with Plaintiff about the pay discrepancies he repeatedly identified.

101.    As a result of the unlawful acts of Defendants, Plaintiff and other similarly situated current and former employees (*i.e.*, the Collective Members) have been deprived of regular compensation and/or overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery against Defendants, jointly and severally, of such amounts, liquidated damages of "an additional equal amount," prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**B.      COUNT 3: VIOLATION OF THE TMWA**
**(PLAINTIFF AND THE TEXAS CLASS MEMBERS V. DEFENDANTS)**

102.    All paragraphs through Section VII of this Petition are hereby incorporated by reference as if fully set forth herein.

103.    The TMWA, at Texas Labor Code § 62.203, permits an action to recover a liability under the TMWA to be "brought by an employee for that employee and other similarly affected

employees," provided that the employee consents in writing to bringing such action and the consent is filed with the court in which the action is brought.

104. Plaintiff has consented in writing and such consent is being filed with this Complaint. *See* Exhibit B.

105. Defendants engaged in a widespread pattern, policy, and practice of violating the TMWA, as detailed in this Original Verified Class and Collective Action Complaint.

106. Defendants' violations of the TMWA, as described in this Complaint, have been willful and intentional.

107. At all times relevant to this suit, Defendants are and were employers of Plaintiff and the Texas Class Members within the meaning of the term "employer" in the TMWA and the case law construing it.

108. At all times relevant to this suit, Plaintiff and the Texas Class Members are and/or were employees within the meaning of the term "employee" in the TMWA.

109. Throughout the relevant period, Defendants violated the TMWA by engaging in a common scheme requiring, suffering, or permitting Plaintiff and the Texas Class to work under 40 hours per week, off the clock and without pay.

110. Throughout the relevant period, Defendants violated the TMWA by engaging in a common scheme requiring, suffering, or permitting Plaintiff and the Texas Class to work more than 40 hours per week, off the clock and without pay.

111. Throughout the relevant period, Plaintiff and the Texas Class worked under 40 hours per week but were not paid a minimum wage for all such work.

112.    Throughout the relevant period, Plaintiff and the Texas Class worked in excess of 40 hours per week but were not paid an overtime premium of 1½ times their regular hourly rate for those additional hours.

113.    Throughout the relevant period, Defendants violated the TMWA by failing, at the end of each pay period, to give Plaintiff and the Texas Class a written earnings statement covering each pay period.

114.    Throughout the relevant period, Defendants violated the TMWA by failing to keep accurate, contemporaneous records of the hours Plaintiff and Texas Class members actually worked each week and/or by altering records of the hours Plaintiff and Texas Class members actually worked each week. While, under the circumstances, Defendants' time records will not fully demonstrate Plaintiff's and Texas Class members' regular and overtime work, other records and data points exist that will confirm the nature and extent of Plaintiff's and Texas Class members' overtime work.

115.    Plaintiff and the Collective Members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of regular and overtime wages owed for time worked under and/or in excess of 40 hours per week from which Defendants derived a direct and substantial benefit.

116.    The minimum and overtime wage and pay period earnings statement requirements of the TMWA apply to Defendants and protect Plaintiff and the Texas Class members.

117.    Defendants failed to pay Plaintiff and the Texas Class members regular and overtime wages for hours worked under and in excess of 40 per week, to which Plaintiff and the Texas Class members are entitled under the TMWA.

118.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Texas Class members and failed to furnish to each of them their wage and hour records showing all hours worked or all wages earned and due for all work performed for labor or services rendered.

119.    By Defendants' knowing or intentional failure to pay Plaintiff and the Texas Class members regular and overtime wages, they have willfully violated the TMWA, including without limitation Texas Labor Code §§ 62.051.

120.    A two-year statute of limitations applies pursuant to Texas Labor Code § 62.202 but should be equitably tolled as to the Texas Class members from the filing of this Complaint until certification of the Texas Class.

121.    Due to Defendants' TMWA violations, Plaintiff and the Texas Class members are entitled to recover from Defendants, jointly and severally, unpaid regular and overtime pay, attorneys' fees, costs, and pre-judgment and post-judgment interest, pursuant to Texas Labor Code §§ 62.201, 62.205.

## IX. JURY DEMAND

122.    Plaintiff hereby demands a trial by jury in the above-captioned matter.

## X. PRAYER

For the foregoing reasons, Plaintiff, on behalf of himself, the FLSA Collective Members, and the Texas Class Members, prays for the following relief:

      a.    Entry of an Order requiring Defendants to file with the Court and provide to Plaintiff's counsel a list of all names and current (or best known) home addresses and email addresses of all individuals who currently work or have worked for Defendants as non-exempt, hourly paid employees during the applicable statute of limitations period, but were not paid a minimum wage for all time worked under 40 hours per week and/or were not paid an overtime premium of 1½ times their regular hourly rate for all time worked in excess of 40 hours per week.

b.      Entry of an Order authorizing Plaintiff's counsel to issue a notice informing Collective Members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit.

c.      Entry of an Order designating the named Plaintiff Andrew Blesi as class representative of the Texas Class, and counsel of record as Class Counsel.

d.      Entry of an Order authorizing Plaintiff's counsel to issue a notice informing Texas Class Members that this action has been filed, of the nature of the action, and of their right to opt-out to this lawsuit.

e.      Issuance of a declaratory judgment that the practices complained of in this Original Verified Collective and Class Action Complaint are unlawful under applicable federal and state law.

f.      Entry of an Order or judgment that Defendants willfully violated the applicable minimum wage and/or overtime provisions of the FLSA and TMWA by failing to pay all required wages to Plaintiff and the Class Members.

g.      Entry of judgment in favor of Plaintiff and the Class Members on their FLSA and TMWA claims, including without limitation:

1.  Awarding compensatory damages to Plaintiff and the Class Members in an amount to be determined by the jury;

2.  Awarding statutory liquidated damages to Plaintiff and the Class Members in an amount equal to the compensatory damages awarded;

3.  Awarding all costs and attorneys' fees incurred in prosecuting this case;

4.  Awarding pre-judgment and post-judgment interest to Plaintiff and the Class Members;

5.  Awarding reasonable incentive awards to the Named Plaintiff to compensate him for the time and effort he has spent and will spend protecting the interest of other Class Members, and the risks he is undertaking;

6.  Awarding appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices;

7.  Awarding all other relief that the Court deems just and equitable; and

8.  Granting leave to add additional case plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court.

Dated: March 28, 2023.                    Respectfully Submitted,

                                          */s/ Michael R. Steinmark*
                                          **MICHAEL R. STEINMARK**
                                          State Bar No. 24051384
                                          **BRUCE W. STECKLER**
                                          State Bar No. 00785039
                                          **AUSTIN P. SMITH**
                                          Texas Bar I.D. 24102506

                                          **STECKLER WAYNE**
                                          **    CHERRY & LOVE, PLLC**

                                          12720 Hillcrest Road, Suite 1045
                                          Dallas, TX 75230
                                          Telephone: 972-387-4040
                                          Facsimile: 972-387-4041
                                          *michael@swclaw.com*
                                          *bruce@swclaw.com*
                                          *austin@swclaw.com*

                                          **ATTORNEYS FOR PLAINTIFFS**
                                          **ANDREW BLESI AND THE PUTATIVE**
                                          **COLLECTIVE AND CLASS**

<u>**VERIFICATION**</u>

My name is Andrew Blesi, my date of birth is _____NOVEMBER 17 1966_____,    and

my address is _____7329 COUNTY ROAD 966, NEVADA TX 75173_____, U.S.A. I declare and

verify under penalty of perjury under the laws of the State of Texas and the United States of

America that I have read the foregoing Original Verified Class and Collective Action Complaint,

and, to the best of my personal knowledge, information known or available to me at this time,

belief, and investigation, the allegations therein are true and correct.

Executed in ___Collin_____ County, State of Texas, on March __27__, 2023.

                                          *Andrew John Blesi*
                                          _____
                                          Andrew Blesi, Declarant

